**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN INZALACO and JOSE ORTIZ, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KENNETH COLE PRODUCTIONS, INC.,<br><br>Defendant. | Case No. 3:26-cv-00771-TLT<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Hon. Trina L. Thompson<br><br>Hearing Date: To be set by Court<br>Hearing Time: To be set by Court<br>Hearing Location: Courtroom 9 |

**TABLE OF CONTENTS**


I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL BACKGROUND ........................................................................................ 3

A. KCP Falsey Told Plaintiffs and Other Users That They Could "OPT OUT" of Cookies on the Website. ........................................................................ 3

B. KCP Intentionally Designed the Website and the Website's Cookie Banner. .............. 5

C. KCP Intentionally Aided the Third Parties' Wrongful Collection of Plaintiffs' and Class Members' Data, By Which Both KCP and the Third Parties Profited. ......... 6

III. ARGUMENT ........................................................................................................ 6

A. Plaintiffs' Claims are Timely. ........................................................................ 6

1. Plaintiff Inzalaco's arbitration provided timely notice of the claim. ............... 10

2. KCP has not suffered prejudice. ........................................................................ 10

3. The time between the end of the arbitration and the filing of this suit has no bearing on the timeliness question. ................................................ 10

B. Plaintiffs Adequately Plead Claims for Common Law Invasion of Privacy and Intrusion Upon Seclusion. ........................................................................ 11

1. Plaintiffs had a reasonable expectation of privacy given Defendant's representation that they could "OPT OUT" of cookies. ................................ 11

2. Defendant's conduct is highly offensive. ........................................................ 12

C. Plaintiffs Have Adequately Pleaded CIPA Claims. ........................................ 13

1. Plaintiffs properly allege a violation of CIPA Section 631(a). ........................ 14

2. Plaintiffs properly plead a "Pen Register" claim under Section 638.51. ......... 15

D. Plaintiffs' Have Adequately Pleaded Their Fraud Claims. ................................ 17

E. Plaintiffs' Unjust Enrichment Claim is Properly Pled. ...................................... 18

F. Plaintiffs Request Leave to Amend If Necessary. ............................................ 19

IV. CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) ........ 7

*A.J. v. LMND Med. Grp.*,
No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024)........ 24

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014) ........ 7

*Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*,
No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751 (C.D. Cal. Dec. 20, 2023) ........ 7

*Brown v. Google LLC*,
525 F.Supp.3d 1049 (C.D. Cal. March 12, 2021)........ 8

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)........ 22

*Brown v. Natures Path Foods, Inc.*,
No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022)........ 21, 22

*Bruton v. Gerber Prod. Co.*,
703 F. App'x 468 (9th Cir. 2017) ........ 23

*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993) ........ 9

*Cody v. Ring LLC*,
No. 23-cv-00562-AMO, 2024 U.S. Dist. LEXIS 30704 (N.D. Cal. Feb. 22, 2024) ........ 17

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) ........ 21

*Davis v. Facebook, Inc. ("In re Facebook Inc. Internet Tracking Litig.")*,
956 F.3d 589 (9th Cir. 2020) ........ passim

*DeSoto v. Yellow Freight Sys.*,
957 F.2d 655 (9th Cir. 1992) ........ 24

*Doe v. Fullstory*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024)........ 8

*Emrich v. Touche Ross & Co.*,
846 F.2d 1190 (9th Cir. 1988) ........ 9

*Fanucci v. Allstate Ins. Co.*,
638 F. Supp. 2d 1125 (N.D. Cal. 2009)........ 10

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005)........ 7

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025) ........ 14, 21

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025)........ 14, 15, 21

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)........ 19, 20

*Greist v. Lendus, LLC*,
No. 24-cv-02411-AMO, 2025 U.S. Dist. LEXIS 108374 (N.D. Cal. June 6, 2025)........ 11

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 13

*Harper v. Charter Communs., LLC*,
No. 2:19-cv-00902 WBS DMC, 2021 U.S. Dist. LEXIS 28747 (E.D. Cal. Feb. 12, 2021)..... 10, 11

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 12

*Hill v. Nat'l Collegiate Athletic Ass'n*,
865 P.2d 633 (Cal. 1994) .......... 14

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 15, 23

*In re GlenFed, Inc. Secs. Litig.*,
42 F.3d 1541 (9th Cir. 1994) .......... 22

*In re Orchid Child Prods. LLC*,
Nos. 2:20-bk-21080-RK, 2:21-ap-01212-RK, 2024 Bankr. LEXIS 962 (Bankr. C.D. Cal. Apr. 22, 2024) .......... 10

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022) .......... 17

*Katz-Lacabe v. Oracle Am.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 23

*Kohler v. Flava Enters.*,
No. 10-CV-0730 IEG (NLS), 2010 U.S. Dist. LEXIS 84033 (S.D. Cal. Aug. 13, 2010) .......... 7

*Lantzy v. Centex Homes*,
31 Cal. 4th 363 (2003) .......... 9, 12

*Lasko v. Caliber Home Loans*,
No. 20-17181, 2022 U.S. App. LEXIS 6215 (9th Cir. Mar. 10, 2022) .......... 6

*McDonald v. Antelope Valley Cmty. Coll. Dist.*,
194 P.3d 1026 (Cal. 2008) .......... 10, 11

*Mirmalek v. L.A. Times Communs. LLC*,
No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) .......... 19, 20

*Moody v. C2 Educ. Sys.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 19

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) .......... 21

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) .......... 15

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) .......... 15

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .......... 17

*Rodriguez v. Ford Motor Co.*,
No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) .......... 16

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) .......... 13, 15

*Rodriguez v. Google*,
No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024) .......... 23

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) .......... 22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) .......... 24

*Shah v. Capital One Fin. Corp.*,
No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025).......... 23

*Shah v. Fandom, Inc.*,
No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024).......... 19, 20

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024).......... 16

*Supermail Cargo, Inc. v. U.S.*,
68 F.3d 1204 (9th Cir. 1995) .......... 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).......... 22

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 18

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 15

**Statutes**

Cal. Penal Code § 631(a) .......... 13, 14

Cal. Penal Code § 638.50(b) .......... 15, 16

Cal. Penal Code § 638.51.......... 13, 15

Cal. Penal Code § 638.51(a) .......... 15

Cal. Penal Code § 638.51(b) .......... 15

**Rules**

Fed. R. Civ. P. 12(b)(6).......... 2

Fed. R. Civ. P. 9(b) .......... 17

## I. INTRODUCTION

As companies develop increasingly invasive and integrated means of extracting and aggregating data from consumers' internet activity, consumers often rely on website's representations that they may browse free from the watchful eyes of third parties. In this case, the privacy that Defendant Kenneth Cole Productions, Inc. ("Defendant" or "KCP") promised to visitors of its website was an outright lie. When Plaintiffs accessed KCP's website, they were presented with a cookie consent banner that promised users the opportunity to "OPT OUT" of cookies—small text files that, when attached to a user's browser or device, enable third parties to track the user and collect their personal and privacy communications in real time.




Selecting "OPT OUT," however, meant nothing. Instead, KCP intentionally programed its website to unlawfully allow third parties to place non-essential third-party tracking cookies on the devices of Plaintiffs and every other visitor to its website before and after Plaintiffs and many users explicitly "OPT[ed] OUT" of third-party tracking cookies. As a result, KCP enabled third parties to track and record Plaintiffs' and other visitors' "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/ or geolocation data" against their explicit consent. Class Action Compl., ECF No. 1 ("Compl.") ¶ 3.

Plaintiffs bring the instant action seeking to hold KCP accountable for this highly offensive invastion of their privacy and to stop KCP from engaging in this unlawful conduct. KCP now moves to dismiss, claiming that Plaintiffs claims are time barred, that Plaintiffs have not adequatley alleged

their claims. *See, generally*, Mot. to Dismiss, ECF No. 17 ("Mot."). Each of these arguments lacks merit.

First, Plaintiffs' claims are timely. Here, both the discovery rule and the fraudulent concealment doctrine tolled CIPA's one-year statute of limitations. Plaintiffs have alleged they do not know how the Websites are programmed and that learning of Defendant's privacy violations requires specialized software developer training. Thus, they could not have discovered the violations at the time of their visits, and Plaintiffs' claims were tolled. Separately, Plaintiffs allege that Defendant affirmatively misrepresented to website visitors that users can "OPT OUT" of cookies and tracking technologies. Thus, Defendant's affirmative misrepresentations concealed their conduct—tolling the statute of limitations. Finally, Plaintiff Inzalaco's claims were equitably tolled during his arbitration against KCP, meaning that he filed this suit within the time remaining in the statute of limitations once tolling ended upon closure of the arbitration.

Second, KCP's 12(b)(6) arguments have no basis on law or fact. For Plaintiffs' invasion of privacy and intrusion upon section claims, Plaintiffs had a reasonable expectation of privacy because Defendant *promised them* that they could "OPT OUT" of cookies. And that Defendant baldly lied about this is highly offensive. For Plaintiffs' CIPA claims, Plaintiffs adequatley plead CIPA wiretapping claims by identifying specific examples of the cookies at issue transmitting contents of communciations in real time—including screenshots of the conduct happening in real time as a user browses KCP's website. Defendant's arguments to the contrary require ignoring allegations in the Complaint. Likewise, Plaintiffs adequalty plead CIPA pen register claims by identifing Third Party cookies that operate as "pen registers" by recording users' IP address and user-agent information. Defendant's only response to these allegations is to raise dated, frequently rejected arguments that CIPA's pen register section does not apply to internet technologies and to argue that, because some of the cookies can also intercept contents of communications, Defendant is somehow exempt from pen register liability.

Finally, KCP's remaining 12(b)(6) arguments also fail. Plaintiffs have adequately pled fraud by alleging a misrepresentation of material fact, KCP's knowledge of falsity and intent to defraud, and resulting damages. Plaintiffs' unjust enrichment claim likewise must proceed because Plaintiffs

adequately plead that KCP unjustly benefited from the collection and monetization of Plaintiffs' private data.

## II. FACTUAL BACKGROUND

### A. KCP Falsey Told Plaintiffs and Other Users That They Could "OPT OUT" of Cookies on the Website.

Like many companies, KCP designed its website, www.kennethcole.com (the "Website"), with resources and programming scripts from third parties that enable those parties to place cookies—small text files sent by a website server to a user's web browser and stored locally on the user's device—and other similar tracking technologies on visitors' browsers and devices to transmit cookies along with user data. CAC ¶ 2. KCP, however, offers consumers a choice to browse *without* having such cookies and other tracking technologies placed on their browsers, allowing consumers to use the Website without being tracked, followed, and targeted by third party data brokers or advertisers. *Id*.

When consumers visit the Website, KCP displays to them a popup cookie consent banner. *Id*. ¶ 1. KCP's cookie banner states that the Website uses cookies but expressly give users the option to control whether they are tracked and how their personal data is used. *Id*.

The cookie consent banner states "This site uses cookies to simplify and improve your usage and experience of this website. Cookies are small text files stored on the device you are using to access this website. If you ignore this message and continue without changing your browser settings, we will assume that you are consenting to our use of cookies. For further information on our use of cookies, please see our Privacy Statement." *Id*. The banner then purported to provide users the opportunity to "OPT OUT" of cookies. *Id*.




The representation that users could "OPT OUT" of cookies was false. Instead, even when users clicked "OPT OUT" and adjusted the necessary settings on the next window, KCP nevertheless permitted third parties to place on Plaintiffs' and Class members' devices and browsers the very cookies they had declined. *Id.* ¶¶ 38–45. Once placed, these cookies allowed Plaintiffs' and Class members' data to be transmitted to third parties in the manner and for purposes alleged in the Complaint and as described below. *Id.* ¶¶ 44–48, 50–53.

Even after users elect to "OPT OUT" of cookies, KCP surreptitiously enabled an enormous number of third parties—including Meta Platforms, Inc. (Facebook), Google LLC (Google Analytics), Microsoft Corp. (Microsoft Bing, Microsoft Clarity, and AppNexus), Adobe Inc. (dpm.demdex.net), ByteDance Ltd. (TikTok), Taboola, Inc., PubMatic, Inc. (pubmatic.com), The Trade Desk, Inc. (adsrvr.org), Snap Inc. (Snapchat or tr.snapchat.com), Criteo S.A. (criteo.com), Yotpo Ltd. (yotpo.com), and many more (collectively, the "Third Parties")—to place and/or transmit tracking cookies on the Website. *Id.* ¶ 3.

The cookies KCP wrongfully permitted the Third Parties to place on Plaintiffs' devices and browsers—despite Plaintiffs' express rejection and despite KCP's express representation to the contrary—permitted the Third Parties to track and collect data in real time regarding Plaintiffs' behaviors and communications, including their browsing history, IP addresses, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data (the "Private Communications"). *Id.* ¶¶ 4, 32, 36–37, 41.

In particular, after Plaintiffs clicked "OPT OUT" and adjusted their settings in the Manage Cookie Settings window to opt out of cookies, they browsed the Website in reliance on the promises and representations KCP made in the cookie banner. *Id.* ¶¶ 148, 160. Despite Plaintiffs' clear declination of cookies, KCP continued to permit the placement of cookies and the transmission of Plaintiffs' data to the Third Parties. *Id.* ¶¶ 149–50, 161–62. This allowed the Third Parties to track and collect Plaintiffs' Private Communications and data as they browsed the Website. *Id.*; *see also id.* ¶¶ 50–135 (describing user data and communications transmitted by the third party cookies KCP permitted to be placed when users browsed the Website).

**B. KCP Intentionally Designed the Website and the Website's Cookie Banner.**

KCP voluntarily—i.e. intentionally—integrated third-party resources from the Third Parties into the Website's programming. *Id.* ¶ 28. KCP knowingly chose to install or integrate the Website with resources from the Third Parties that, among other things, use cookies. *Id.* ¶ 35. Thus, when Plaintiffs and other Class members visited the Website, both first-party cookies and third-party cookies were placed on their devices and/or transmitted to KCP and the Third Parties. *Id.* KCP intentionally incorporated into the Website the software code that caused placement of the cookies. *Id.* KCP controls the software code of the Website—meaning it has complete control over whether first-party and third-party cookies are placed on users' devices and/or transmitted to third parties. *Id.* During the time period in which Plaintiffs accessed the Website, the Website—which, again, KCP developed, maintains, and controls—permitted the Third Parties to place, store, and/or transmit third-party tracking cookies on Plaintiffs' devices and browsers. *Id.*

The Website allows visitors to view information about KCP products and purchase merchandise. *Id.* ¶ 34. As they interact with the Website (e.g., by entering data into forms, clicking on links, and making selections), Website users communicate Private Communications to KCP. *Id.* The third-party cookies stored on and/or loaded from users' devices when they interact with the Website are transmitted to the Third Parties, enabling them to, in real time, surreptitiously track and collect a Website users' Private Communications. *Id.* ¶ 32. Third-party cookies include an identifier that allows the third-party to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions. *Id.* ¶ 36 (quoting KCP Privacy Policy: "These third parties may

collect information about a consumer's online activities over time and across different websites when he or she uses our website."), ¶ 48 ("Because third-party cookies cause the Third Parties to track users' behavior across the Internet and across time, user data can be correlated and combined with other data sets to compile comprehensive user profiles that reflect consumers' behavior, preferences, and demographics . . .").

### C. KCP Intentionally Aided the Third Parties' Wrongful Collection of Plaintiffs' and Class Members' Data, By Which Both KCP and the Third Parties Profited.

KCP uses and integrates the third-party resources on the Website pursuant to agreements between KCP and the Third Parties. *Id.* ¶ 28. KCP intentionally designed the Website with code that allows Third Parties to place cookies and send data directly to themselves—allowing the Third Parties to, simultaneous with Plaintiffs' activity on the Website, analyze and aggregate the wrongfully collected data for their own purposes and financial gain. *Id.* ¶ 32.

Third-party cookies are used for a variety of purposes, including (i) analytics (e.g., tracking and analyzing visitor behavior, user engagement, and effectiveness of marketing campaigns); (ii) personalization (e.g., remembering a user's browsing history and purchase preferences to enable product recommendations); (iii) advertising/targeting (e.g., delivering targeted advertisements based on an aggregated profile of the user's behavior, preferences, and demographics); and (iv) social media integration (i.e. sharing users' activities with social media platforms). *Id.* ¶ 33. Ultimately, third-party cookies are utilized to boost website performance and revenue through the collection, utilization, and dissemination of user data. *Id.*

## III. ARGUMENT

### A. Plaintiffs' Claims are Timely.

KCP incorrectly asserts that Plaintiffs' claims are time barred. This argument is wrong for several reasons.

First, KCP claims that because Plaintiff Ortiz alleges to have visited the Website in the last four years, he must have visited four years prior to filling the Complaint. Mot. at 7. This is certainly not a reasonable reading of the allegations, nor is it an inference to which KCP is entitled on a motion to dismiss. More fundamentally, KCP also claims that Plaintiff Ortiz should have been on inquiry

notice upon his visit to the Website because the cookie banner and preference window disclosed the Website uses cookies. Mot. at 7 n.6. This is not a serious argument. Indeed, the Website did disclose that it used cookies. But the Website also told users that they could "OPT OUT" of those cookies, which was a lie and the underlying reason for this action. KCP provides no explanation for ignoring these central facts of the Complaint or for why Plaintiff Ortiz and other users should not have believed the Website's representation that they could "OPT OUT" of cookies.

Second, the statute of limitations is an affirmative defense. *See Lasko v. Caliber Home Loans*, No. 20-17181, 2022 U.S. App. LEXIS 6215, at *1 (9th Cir. Mar. 10, 2022). Plaintiffs are "not required to plead around anticipated affirmative defenses, including the statute of limitations." *Kohler v. Flava Enters*., No. 10-CV-0730 IEG (NLS), 2010 U.S. Dist. LEXIS 84033, at *3 (S.D. Cal. Aug. 13, 2010). As such, "[d]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co*., 765 F.3d 999, 1004 (9th Cir. 2014). KCP's burden is extraordinarily high: dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995). "As a result, the defense generally cannot be asserted on a Rule 12(b)(6) motion." *A.B. v. Google LLC*, 737 F. Supp. 3d 869, 877–78 (N.D. Cal. 2024).

Here, both the discovery rule and the fraudulent concealment doctrine tolled CIPA's one-year statute of limitations. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*, No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751, at *40 (C.D. Cal. Dec. 20, 2023) (quoting *Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal. 4th 797, 807 (2005)). Plaintiffs alleged that they do not know how the Website is programmed and that determining whether KCP is placing unauthorized cookies and transmitting data to third parties requires specialized software developer training. Compl. ¶¶ 153 (Ortiz), 165 (Inzalaco). Thus, Plaintiffs could not have discovered the violation at the time of their visits, and Plaintiffs' claims were tolled. *See Doe v. Fullstory*, 712 F. Supp. 3d 1244, 1255–56 (N.D. Cal. 2024) (discovery rule applied where plaintiff alleged that defendant had exclusive knowledge of its platform, and the highly technical nature of the violation all

but ensured that Plaintiff could not discover the violation at all).

Separately, fraudulent concealment tolls a plaintiff's claims when "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1070 (C.D. Cal. March 12, 2021) (internal quotation marks and citation omitted). Plaintiffs demonstrate these requirements: they allege that KCP affirmatively misrepresented to Website visitors that users can "OPT OUT" of cookies and tracking technologies. *See, e.g.,* Compl. ¶ 42 ("Defendant's representations, however, were false."). Because of KCP's affirmative misrepresentations, and Plaintiffs Ortiz's and Inzalaco's lack of technical expertise, Plaintiffs Ortiz and Inzalaco acted diligently in bringing this action after learning of KCP's privacy violations on the Website. *Id*. Indeed, Plaintiffs' invocation of the fraudulent concealment doctrine is stronger than it was in *Doe v. Fullstory* because Plaintiffs have "allege[d] facts with respect to . . . the source of [Defendant's] fraudulent concealment;" namely, the affirmative misrepresentation that website users could truly "OPT OUT" of cookies. *See Fullstory*, 712 F. Supp. 3d at 1256. As such, KCP's fraudulent concealment tolled the statute of limitations for Plaintiffs Ortiz and Inzalaco.

Finally, KCP incorrectly argues that Plaintiff Inzalaco was required to file his suit immediately following the closing of the Arbitration to avoid CIPA's one-year statute of limitations. Mot. at 8–9. But, contrary to what KCP argues, the limitations period was equitably tolled during the pendency of the arbitration proceeding, and, thus, extended by an additional 298 days. Critically, KCP simply ignores, that "the effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370–71 (2003) (emphasis added). Here, that means that, so long as the arbitration proceeding meets the three elements required for tolling, the 298 days it took are "tacked onto" the end of Plaintiff Inzalaco's limitation period and his claim is timely.

California law determines whether the limitations period for Plaintiff Inzalaco's CIPA claim

was tolled. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (noting "we borrow our rules for equitable tolling of the period from the forum state, California" and that tolling rules are "liberally applied"); *Emrich v. Touche Ross & Co*., 846 F.2d 1190, 1199 (9th Cir. 1988) (explaining "[w]here a district court applies or borrows a state statute of limitations, it is also required to apply the state's equitable exceptions," and thus "[t]he district court was required to consider and apply the California equitable tolling doctrine"). The doctrine is designed to preserve fairness and prevent "technical forfeitures" of a claim "when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 194 P.3d 1026, 1031 (Cal. 2008). Tolling applies when three elements are met: (1) plaintiff provides timely notice of the claim to defendant; (2) the defendant suffers no prejudice from the delay; and (3) the plaintiff's conduct during the tolled period was reasonable and in good faith. *Id.* at 1033.

Equitable tolling is typically appropriate, where, as here, "an injured person has several legal remedies and, reasonably and in good faith, pursues one." *McDonald*, 194 P.3d at 1031. That encompasses circumstances "where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason." *Id*. at 1032. Indeed, courts routinely hold that an arbitration proceeding tolls any relevant statute of limitations. *E.g., Fanucci v. Allstate Ins. Co*., 638 F. Supp. 2d 1125, 1137–38 (N.D. Cal. 2009) ("Even if completion of the arbitration were not deemed mandatory for purposes of automatic tolling under *McDonald*, the Court would still find tolling appropriate. . ."); *Harper v. Charter Communs., LLC*, No. 2:19-cv-00902 WBS DMC, 2021 U.S. Dist. LEXIS 28747, at *15 (E.D. Cal. Feb. 12, 2021) (tolling statute of limitations period during pendency of an arbitration that addressed threshold issues); *see also In re Orchid Child Prods. LLC*, Nos. 2:20-bk-21080-RK, 2:21-ap-01212-RK, 2024 Bankr. LEXIS 962, at *9 (Bankr. C.D. Cal. Apr. 22, 2024) ("[E]quitable tolling may apply to arbitration proceedings" and collecting such cases). This is because "the filing of the first proceeding that gives rise to tolling" here, arbitration, "preserves the defendants' significant 'interest in being promptly appraised of the claims against them in order that they may gather and preserve evidence" while also "afford[ing] grievants the opportunity to pursue informal [out-of-court] remedies, a process we have repeatedly encouraged." *McDonald*, 194 P.3d at 1032.

**1. Plaintiff Inzalaco's arbitration provided timely notice of the claim.**

KCP does not contend that it was not timely notified of Plaintiff Inzalaco's Claims. Nor could it. On August 3, 2024, he notified KCP of the same claims alleged in the Complaint. Compl. ¶ 16. On September 6, 2024, he filed a demand for arbitration. *Id.* ¶ 18. As the California Supreme Court explained in *McDonald*, courts "should liberally apply tolling rules or their functional equivalents to situations in which the plaintiff has satisfied the notification purpose of a limitations statute" because that is the primary purpose of such limitations periods. 194 P.3d at 1033.

**2. KCP has not suffered prejudice.**

Likewise, KCP does not contend that it has suffered any prejudice. This is because KCP has been on notice of the need to investigate the claims and preserve evidence since August 3, 2024. "Under the second elements, courts' 'core focus' is whether application of equitable tolling would prevent the defendant from defending a claim on the merits." *Harper*, 2021 U.S. Dist. LEXIS 28747, at *14. As noted above, Plaintiff Inzalaco put KCP on notice of the exact claims he now pursues in this litigation, so nothing has prevented it from defending itself against the claim. *See id.* ("Harper's claims in his demand for arbitration were the same as his claims filed in court . . . Harper indicated his intention to pursue his claims on behalf of a class, the court does not 'see how tolling [the] statute of limitations would undermine the [defendant's] ability to defend[.]'"); *see also Greist v. Lendus, LLC*, No. 24-cv-02411-AMO, 2025 U.S. Dist. LEXIS 108374, at *22 (N.D. Cal. June 6, 2025) (defendant "has been aware of the scope and nature of these claims even prior to the initiation of the lawsuit").

**3. The time between the end of the arbitration and the filing of this suit has no bearing on the timeliness question.**

KCP's argument that Plaintiff Inzalaco's claims are not timely focuses almost exclusively on whether the delay between the end of the arbitration and the filing of this suit was reasonable. But, because the "limitations period stop[ped] running during" the 298 days of the arbitration, *Lantzy*, 31 Cal. 4th at 370, plaintiff still had time to file suit before the limitations period would run—with no further tolling required. Since he brought his claim within the properly calculated limitations period, it does not matter whether the "delay" between the first action and the second was "reasonable" any more than the question of why any plaintiff might wait until only two months before the expiration of

a statute of limitations to file suit. The question of reasonableness applies only to a time period where the statute of limitations is being tolled, i.e., when it is not running, not to a period when it is running. There is no doubt that pursuing his claims in arbitration was reasonable. Accordingly, Plaintiff Inzalaco's claims are timely.

### B. Plaintiffs Adequately Plead Claims for Common Law Invasion of Privacy and Intrusion Upon Seclusion.

Claims for common law invasion of privacy and intrusion upon seclusion require: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *Davis v. Facebook, Inc. ("In re Facebook Inc. Internet Tracking Litig.")*, 956 F.3d 589, 601 (9th Cir. 2020); *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286–87 (2009). The conduct alleged here is textbook invasion of privacy: KCP promised Plaintiffs that they could "OPT OUT" of cookies but then immediately placed cookies on their devices and browsers anyway, and enabled third-parties to collect broad swaths of data that users like Plaintiffs asked to keep private. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *28–29 (N.D. Cal. May 21, 2021) ("Per the FAC, Google intercepted data akin to 'browsing habits and histories,' including 'detailed URL requests, app browsing histories, and search queries which [p]laintiffs . . . sent to those apps[.]' . . . In sum, the Ninth Circuit has left little doubt as to plaintiffs' intrusion upon seclusion and invasion of privacy claims. Both survive Google's motion to dismiss.").

#### 1. Plaintiffs had a reasonable expectation of privacy given Defendant's representation that they could "OPT OUT" of cookies.

Plaintiffs had a reasonable expectation of privacy in their private communications on the Website because KCP promised them that their browsing activity and Private Communications would remain private if they elected to "OPT OUT" of cookies. *In re Facebook Internet Tracking Litig.*, 956 F.3d at 603–04 (finding a reasonable expectation of privacy can arise if users decline consent to tracking, if a defendant makes an affirmative statement that users' information would not be collected, and/or if the nature of the information collected is sensitive (such as browsing history correlated with additional personal information)); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) (plaintiffs "plausibly alleged a reasonable expectation of privacy because Google allegedly

collected potentially sensitive data while users might not expect that Google was tracking them”).

Even though KCP does not contest that it promised Plaintiffs and users that they could “OPT OUT” of cookies while using the Website, KCP claims that Plaintiffs “had no reasonable expectation of privacy in the circumstances.” Mot. at 9–10. That KCP is arguing that Plaintiffs should not have expected privacy even when it was promised to them by KCP should not be ignored. Indeed, the manner in which the data was collected is significant. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 603. Here, KCP affirmatively mislead Plaintiffs and other users into believing that their browsing would be private through misrepresentation and deceit—violating social norms. KCP’s suggestion that Plaintiffs and Class members had no reasonable expectation of privacy when it promised them to expect privacy asks this Court to conclude, on the pleadings, that such deceit does not violate social norms. This Court should reject such a cynical position.

**2. Defendant’s conduct is highly offensive.**

Likewise, Plaintiffs have shown that KCP’s intrusion was highly offensive. “Determining whether a defendant’s actions were “highly offensive to a reasonable person” requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder’s motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 606 (citation omitted).

Ultimately, the question of whether an intrusion is “highly offensive” is one that cannot be resolved on the pleadings because it is fact-intensive and entails weighing the “extent and gravity of the invasion.” *Hill v. Nat’l Collegiate Athletic Ass’n*, 865 P.2d 633 (Cal. 1994); *see also Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *26 (N.D. Cal. July 14, 2025) (finding that it was premature to dismiss substantially similar claims based on a determination of how offensive or serious the privacy intrusion is); *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *22 (N.D. Cal. Aug. 29, 2025) (agreeing with *Motorola*); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 606 (stressing the uniquely subjective nature of the “highly offensive inquiry before concluding it “cannot be resolved at the pleading stage”); *Rodriguez*, 2021 U.S. Dist. LEXIS 98074, at *28 (“[n]or is the offensiveness of

Google's putative misconduct any less a matter of 'public policy,' or any more susceptible to 'resol[ution] at the pleading stage,' than that ascribed to *Facebook*"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("[u]nder California law, courts must be reluctant to reach a conclusion at the pleading state about how offensive or serious the privacy intrusion is"); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1078 (N.D. Cal. 2016) ("[t]he offensiveness inquiry is fact-specific"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *9 (N.D. Cal. Oct. 23, 2019) ("a jury could conclude" that the intrusion into plaintiff's identity and browsing habits "is a highly offensive breach of norms"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury"). Here, the jury is entitled to consider all of the circumstances around KCP's conduct, including the fact that it lied about not tracking visitors, to determine whether KCP's invasion of privacy was highly offensive.

Despite KCP's characterization of its conduct as "routine commercial behavior," and "commonplace," promising consumers one thing and doing the opposite can hardly be described as "routine," especially when it comes to sharing users' browsing activities and private communications with third parties. Indeed, no court has ever determined that such behavior is "routine," and, in fact, courts hold such conduct is a highly offensive invasion of privacy. *See St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024) (finding that "defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive).

### C. Plaintiffs Have Adequately Pleaded CIPA Claims.

Plaintiffs allege two claims under CIPA. First, Plaintiffs allege a wiretapping claim under the fourth prong of Section 631(a) which makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up). Second, Plaintiffs allege that Defendant's conduct

violates CIPA § 638.51, which prohibits the unconsented to installation and use of "pen registers" and "trap and trace devices." Each of KCP's challenges to these claims are meritless.

**1. Plaintiffs properly allege a violation of CIPA Section 631(a).**

Plaintiffs allege that KCP violated CIPA by aiding and abetting the Third Parties in violating Section 631(a), which prohibits, in relevant part, "any person . . . who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state," as well as "us[ing] or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any [such] information." Cal. Pen. Code § 631(a). This clause "can apply to internet communications." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1116 (S.D. Cal. 2024) (citing *Cody v. Ring LLC*, No. 23-cv-00562-AMO, 2024 U.S. Dist. LEXIS 30704 (N.D. Cal. Feb. 22, 2024)); *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

Here, Plaintiffs have alleged that KCP integrated the Website with Third Party code that enables the Third Parties to use cookies to "eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties." Compl. ¶ 49. The Complaint includes extensive allegations describing how the cookies placed by the Third Parties transmit communications "in real time." *See, e.g., id.* ¶¶ 32, 44–53. Specifically, Plaintiffs allege that "the third-party cookies stored on and/or loaded from users' devices when they interact with the Website are transmitted to those third parties, enabling them to surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant." *Id.* ¶ 32. Plaintiffs further demonstrate the plausibility of these allegations by including screenshots showing network traffic that occurs after a user rejects all cookies using the Website's cookie banner and proceeds to browse the Website. *Id.* ¶¶ 44–53. As depicted, "despite the user's rejection of all cookies, the user's interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains like www.facebook.com, www.google.com,

c.bing.com, and others. As further shown in the right-hand column of the screenshots, the user's browser sent cookies along with those HTTP requests to the third parties." *Id.* ¶¶ 45–46.

KCP suggests that Plaintiffs do not allege that third parties intercepted Plaintiffs' communications "while" in transit. And although it is true that Plaintiffs must allege that "the interception must occur contemporaneous with the sending or receipt of the message," *see Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023), Plaintiffs clearly do so here. Indeed, not only have Plaintiffs explained how third-party cookies operate, they identify specific examples of the cookies at issue that transmit data in real time. Compl. ¶¶ 44–53.

**2. Plaintiffs properly plead a "Pen Register" claim under Section 638.51.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs adequately plead each element of this definition by alleging that the Third Parties' cookies and the corresponding software code KCP installed that allows the Third Parties to attach cookies operate as "pen registers" because they are processes that record users' IP address and user-agent information, which is not the content of the electronic communications being transmitted from users' computers or smartphones to the Websites.

Courts in this District have repeatedly rejected the argument that internet technologies are not pen registers as contrary to the statute's plain language. *See, e.g., Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023); *Moody v. C2 Educ. Sys.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024). This is because "the California' Legislature's chosen definition" of a pen register is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Section 638.51(b)). "[T]he Court applies the

plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" like Plaintiffs allege here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah*, 2024 U.S. Dist. LEXIS 193032, at *9. "[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there . . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id*.

Like the plaintiffs in *Mirmalek*, *Greenley*, and *Shah*, Plaintiffs allege that the third party cookies and the corresponding software code installed by KCP on the Websites are each a "device or process." *Compare Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 with Compl. ¶ 221 (explaining how "cookies and the corresponding software code"—which are pen registers—were placed on Plaintiffs' and Class members' browsers and devices, and/or [] used to transmit Plaintiffs' and Class members' IP address and user-agent information). Thus, KCP's argument that cookies and corresponding software are not pen registers fails.

KCP also argues that because Plaintiffs allege that certain third party cookies also tracked contents of communications, they cannot also plead that the third party cookies operated at pen registers under § 638.50(b). *See* Mot. at 16. Not so. A pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information . . . but not the contents of a communication." And this is precisely what Plaintiffs have alleged. *See* Compl. ¶ 221 ("Some of the information collected by the Third Parties' cookies and the corresponding software, including IP addresses and user-agent information, does not constitute the content of Plaintiffs' and the Class's electronic communications with the Website."). Nothing that Defendant cites states that simply because a device can function both as a wiretap (a device that intercepts communications) and a pen register (a device that captures address and user-agent information but not communications) that the device is not a pen register. Indeed, it would do poor service to the broad language of the statute to

prevent liability simply because a device is sophisticated enough to do both. Plaintiffs allege that the Third Parties' cookies and the corresponding software code installed by Defendant on its Website are "pen registers" because they are "device[s] or process[es]" that "capture[d]" the "routing, addressing, or signaling information"—including, the IP address and user-agent information—from the electronic communications transmitted by Plaintiffs. Compl. ¶ 220. Moreover, the Complaint alleges that the Third Parties attached several different cookies to Plaintiffs' devices and browsers, which collected different data sets. *See, e.g.*, Compl. ¶¶ 54–135 (identifying and describing a variety of cookies, including ones that transmits a user's IP address and unique user identifiers). This is sufficient. And arguments to the contrary have "been considered and rejected multiple times." *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *32; *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *30 ("Motorola argues that the legislative history of Section 638.51—which discusses pen registers in relation to telephones—indicates that the statute applies only to telephones. The Court disagrees.").

**D. Plaintiffs' Have Adequately Pleaded Their Fraud Claims.**

"The Ninth Circuit has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brown v. Natures Path Foods, Inc*., No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022) (Gilliam, J.) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted)). "In short, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *In re GlenFed, Inc. Secs. Litig*., 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Brown*, 2022 U.S. Dist. LEXIS 42760, at *7–8.

Despite KCP's assertion to the contrary, Plaintiffs have pleaded "the who, what, when, where, and how" of Defendants' fraud. They allege that Defendants (the who), fraudulently stated that users could "OPT OUT" of cookies (the what), during the class period (when), on the Website (where), and

that this fraudulent statement appeared on the cookie consent banner (the how). *E.g.*, Compl. ¶¶ 1–3, 42–44, 149–51, 161–63 (alleging fraud); ¶¶ 25–28, 35–37 (alleging intentional conduct); ¶¶ 148, 150, 160, 162 (alleging reliance); ¶¶ 136–41, 232 (alleging injury).

KCP's argument that Plaintiffs have failed to identify any loss of money, property, or value is misguided and ignores that Plaintiffs have alleged an invasion of protected interests, misappropriation of their information, and that their information has value. *See*, *e.g.*, Compl. ¶¶ 136–41, 232. Invasions of privacy have long been recognized at common law as concrete injuries sufficient to support a lawsuit. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). And Plaintiffs "have a stake in the value of their misappropriated data." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) (denying summary judgment on a claim involving misappropriated data); *see also Rodriguez v. Google*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290, at *35–36 (N.D. Cal. Jan. 3, 2024) (summarizing viable damages model based on "[u]ser's willingness to pay to prevent data collection").

**E. Plaintiffs' Unjust Enrichment Claim is Properly Pled.**

The Ninth Circuit has allowed independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook Consumer Priv.*, 402 F. Supp. 3d at 803 (permitting an independent unjust enrichment claim alongside valid breach of contract and fraud claims). To successfully plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe v. Oracle Am.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023). Here, Plaintiffs may bring an unjust enrichment claim because they allege that Defendant benefited from using their Private Communications. Compl. ¶¶ 36–37, 136–41 (describing ways in which Defendant benefited from the use of cookies); *see also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 600 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data" where they "allege that their browsing histories carry financial value"). "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claim in a privacy case); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (finding that plaintiffs' allegations that defendant benefitted

from their information by exchanging it without their consent and that plaintiffs failed to receive the benefit of their bargain was sufficient to plead unjust enrichment).

**F. Plaintiffs Request Leave to Amend If Necessary.**

"[L]eave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any claims in the Complaint insufficient, Plaintiff requests leave to amend to cure the identified deficiencies.

## IV. CONCLUSION

For the foregoing reasons, KCP's motion to dismiss must be denied.

Dated: April 20, 2026

**GUTRIDE SAFIER LLP**

*<u>/s/ Patrick J. Branson</u>*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*